[No. 86530-2.   En Banc.]
Argued May 24, 2012.     Decided January 31, 2013.

THE STATE OF WASHINGTON, *Respondent*, v. JULIO CESAR
ALDANA GRACIANO, *Petitioner*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioner.

*Mark E. Lindquist, Prosecuting Attorney*, and *Thomas C. Roberts, Deputy*, and *Margo Martin, Legal Intern*, for respondent.

¶1 STEPHENS, J. — We have been asked to resolve conflicting authority on which standard of review applies to a sentencing court's determination of "same criminal conduct" under RCW 9.94A.589(1)(a). The Court of Appeals, Division Two, reviewed this determination de novo, adopting the reasoning of Division Three in *State v. Torngren*, 147 Wn. App. 556, 196 P.3d 742 (2008). The court in *Torngren* acknowledged a long line of precedent stating the proper standard is abuse of discretion but held that a de novo standard "seem[s] more appropriate." *Id.* at 562. We disagree. Today, we reaffirm that determinations of same criminal conduct are reviewed for abuse of discretion or misapplication of law. Because the sentencing court here neither abused its discretion nor misapplied the law, we reverse the Court of Appeals.

I

BACKGROUND

¶2 Julio Cesar Aldana Graciano was charged by amended information with four counts of first degree rape of a child and two counts of first degree child molestation relating to his cousin's daughter, E.R. Clerk's Papers (CP) at 62-64. He was also charged with one count of first degree child molestation relating to his cousin's son, J.R. CP at 64.

¶3 At trial, nine-year-old E.R. testified about the events that unfolded when Graciano came to live with her family for several months at a time. She testified to four incidents of rape, which she described as occurring in the area between the kitchen and living room, Verbatim Transcript of Proceedings (Dec. 2, 2009), at 230, 233, in her bedroom, *id.* at 237-38, in the kitchen, *id.* at 238-39, and on the couch, *id.* at 252.

¶4 E.R. also testified that Graciano touched her upstairs in the living room, grabbing her hand and making her touch his exposed penis. *Id.* at 236. E.R.'s testimony was not clear on how many times she was molested. *Compare id.* at 254 (stating she was on the couch with her uncle two times), *with id.* at 258-59 (admitting that these incidents happened more than a couple times).

¶5 The jury was instructed that a guilty verdict requires unanimous agreement on which act was proved beyond a reasonable doubt. *See State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984); CP at 77. The jury was further instructed that the acts constituting each count must be separate and distinct from one another. CP at 77, 81-84, 87-88. The jury found Graciano guilty of the four counts of first degree child rape and two counts of first degree child molestation relating to E.R. CP at 93-98. The jury found Graciano not guilty of the molestation charge relating to J.R. CP at 99.

¶6 At sentencing, defense counsel argued the crimes should be considered the "same criminal conduct" under RCW 9.94A.589(1)(a) for purposes of calculating Graciano's offender score. Sentencing Verbatim Report of Proceedings (Jan. 22, 2010) at 3. The court disagreed, holding that there "was certainly sufficient evidence for each and every one of the counts to be separate and distinct." *Id.* at 6. The court sentenced Graciano in accordance with its ruling.

¶7 Graciano appealed on a number of grounds, including that his convictions constituted the same criminal conduct because they involved the same victim, same criminal intent, and same time and place. On that issue, the Court of Appeals reviewed the sentencing court's determination de novo. *See State v. Aldana Graciano*, noted at 163 Wn. App. 1014, 2011 Wash. App. LEXIS 1985.

¶8 In conducting a de novo review, the court found that Graciano had the same criminal intent of present sexual gratification when he molested and raped E.R. *Graciano*, slip op. at 8-9, 2011 Wash. App. LEXIS 1985, at *14. While

the court expressed confidence that each of the four rapes was separate from the others, it noted the record was unclear as to whether Graciano raped E.R. on the living room couch and twice molested her in a single incident or on different occasions. *Graciano*, slip op. at 9, 2011 Wash. App. LEXIS 1985, at *13-14. Because the record did not establish these incidents were separate, the court held that the child molestation convictions and one of the child rape convictions constituted the same criminal conduct. *Graciano*, slip op. at 9, 2011 Wash. App. LEXIS 1985, at *13-14. The court remanded for resentencing consistent with this holding. In all other respects, the Court of Appeals affirmed the trial court's judgment.

¶9 Both Graciano and the State sought review by this court. We granted review only on the issue of what standard of review applies to a trial court's determination of same criminal conduct.

## II

## ANALYSIS

¶10 Today we reaffirm our precedent, holding that determinations of same criminal conduct are reviewed for abuse of discretion or misapplication of law. The Court of Appeals erroneously applied a de novo standard of review and, in doing so, inappropriately placed the burden of proof on the State. Applying the correct standard, we hold that the sentencing court neither abused its discretion nor misapplied the law in refusing to treat Graciano's crimes as part of the same criminal conduct.

### *Appellate Courts Review Determinations of Same Criminal Conduct for Abuse of Discretion or Misapplication of Law*

¶11 A determination of "same criminal conduct" at sentencing affects the standard range sentence by altering the offender score, which is calculated by adding a specified

number of points for each prior offense. RCW 9.94A.525. For purposes of this calculation, current offenses are treated as prior convictions. RCW 9.94A.589(1)(a). However, "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." *Id.*

¶12 Crimes constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.* Deciding whether crimes involve the same time, place, and victim often involves determinations of fact. In keeping with this fact-based inquiry, we have repeatedly observed that a court's determination of same criminal conduct will not be disturbed unless the sentencing court abuses its discretion or misapplies the law. *E.g., State v. Elliott,* 114 Wn.2d 6, 17, 785 P.2d 440 (1990) (affirming the petitioner's sentence where the "same criminal conduct" determination involved "neither a clear abuse of discretion nor a misapplication of the law"); *State v. Burns,* 114 Wn.2d 314, 317, 788 P.2d 531 (1990) (noting the same criminal conduct determination will not be disturbed unless an appellate court "finds a clear abuse of discretion or misapplication of the law"); *State v. Maxfield,* 125 Wn.2d 378, 402, 886 P.2d 123 (1994) ("The trial court's determination whether two offenses require the same criminal intent is reviewed by this court for abuse of discretion or misapplication of the law."); *State v. Porter,* 133 Wn.2d 177, 181, 942 P.2d 974 (1997) ("An appellate court will reverse a sentencing court's decision only if it finds a clear abuse of discretion or misapplication of the law."); *State v. Williams,* 135 Wn.2d 365, 367, 957 P.2d 216 (1998) (framing the issue as whether "the sentencing court abuse[d] its discretion by concluding that charges . . . did not constitute the same criminal conduct"); *State v. Tili,* 139 Wn.2d 107, 122, 985 P.2d 365 (1999) (" 'A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of

discretion or misapplication of the law.' " (quoting *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993))); *State v. Haddock*, 141 Wn.2d 103, 110, 3 P.3d 733 (2000) ("[A]n appellate court . . . will reverse a sentencing court's determination of 'same criminal conduct' only on a 'clear abuse of discretion or misapplication of the law.' " (quoting *Elliott*, 114 Wn.2d at 17)); *State v. French*, 157 Wn.2d 593, 613, 141 P.3d 54 (2006) ("A trial court's determination of what constitutes the same criminal conduct will not be disturbed absent an abuse of discretion or misapplication of the law."); *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011) ("We review the 'trial court's determination of what constitutes the same criminal conduct [for] abuse of discretion or misapplication of the law.' " (alteration in original) (internal quotation marks omitted) (quoting *Tili*, 139 Wn.2d at 122)).

¶13 While acknowledging such precedent, the Court of Appeals in this case "f[ou]nd this standard unpersuasive" and applied a de novo standard. *Graciano*, slip op. at 8 n.3, 2011 Wash. App. LEXIS 1985, at *11 n.3. In doing so, it relied on *Torngren*, a case in which Division Three of the Court of Appeals decided a de novo standard "seem[s] more appropriate" for reviewing a determination of same criminal conduct. 147 Wn. App. at 562.[1] Departure from the settled "abuse of discretion or misapplication of law" standard is unwarranted, and we disaffirm any suggestion that determinations of same criminal conduct are appropriately reviewed de novo.

¶14 Instead, we review the sentencing court's determination of Graciano's criminal conduct for abuse of discretion or misapplication of law. Under this standard, when the record

---

[1] The *Torngren* court considered a same criminal intent determination based on a written record with uncontroverted facts. Because the test for determining same criminal intent is " 'objective,' " the court noted it stood in as good a position as the trial court to evaluate whether the crimes involved the same criminal intent. 147 Wn. App. at 562-63 (quoting *State v. Dunaway*, 109 Wn.2d 207, 216-17, 743 P.2d 1237, 749 P.2d 160 (1987)). While the central question in *Torngren* appeared capable of resolution as a matter of law, where facts are disputed or otherwise uncertain, most determinations of same criminal conduct will involve the court's discretion. *See State v. Rodriguez*, 61 Wn. App. 812, 816, 812 P.2d 868 (1991).

supports only one conclusion on whether crimes constitute the "same criminal conduct," a sentencing court abuses its discretion in arriving at a contrary result. *See State v. Rodriguez*, 61 Wn. App. 812, 816, 812 P.2d 868 (1991). But where the record adequately supports either conclusion, the matter lies in the court's discretion. Whether the record "supports" a particular conclusion, of course, may depend on who carries the burden of proof. Thus, it is important to clarify who bears the burden for findings of same criminal conduct.

### The Defendant Bears the Burden of Proving Same Criminal Conduct

¶15 Engaging in de novo review, the Court of Appeals appeared to place the burden on the State to show Graciano's crimes were separate. It first noted E.R.'s testimony "[wa]s not clear" as to whether the molestations occurred on two occasions "separate and distinct" from the rape on the couch. *Graciano*, slip op. at 9, 2011 Wash. App. LEXIS 1985, at *12-13. Because the record failed to establish that these incidents were separate, the court concluded the time and place of these crimes was the same. *Graciano*, slip op. at 9, 2011 Wash. App. LEXIS 1985, at *12-13.

¶16 Endorsing this reasoning, Graciano contends the State bears the burden to prove the crimes did *not* occur in one incident. Br. of Appellant at 14. For support, he relies on *State v. Dolen*, 83 Wn. App. 361, 921 P.2d 590 (1996). There, the Court of Appeals required the State to prove that multiple crimes were separate, concluding this was in keeping with the requirement the State prove the defendant's criminal history by a preponderance of the evidence. *Id.* at 365 (citing *State v. Jones*, 110 Wn.2d 74, 77, 750 P.2d 620 (1988)). Because the State failed to prove that the defendant's crimes occurred in separate incidents, the *Dolen* court held the trial court's determination that the crimes were not the same criminal conduct was "unsupported." *Id.*

¶17 This reasoning cannot withstand scrutiny. The State's burden to prove the existence of prior convictions at sentencing does not include establishing that *current* offenses—treated as prior convictions for purposes of offender score calculation—constitute separate criminal conduct. These determinations differ in a critical respect: one favors the State, the other the defendant. This distinction matters because, in general, "[t]he burden is on a moving party to come forward with sufficient facts to warrant the exercise of discretion in his or her favor." *State v. Hoffman*, 116 Wn.2d 51, 74, 804 P.2d 577 (1991).

¶18 It is because the existence of a prior conviction favors the State (by increasing the offender score over the default) that the State must prove it. *See* RCW 9.94A.500(1) ("If the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist."); *State v. Lopez*, 147 Wn.2d 515, 519, 55 P.3d 609 (2002).

¶19 In contrast, a "same criminal conduct" finding favors the defendant by lowering the offender score below the *presumed* score. *State v. Farias Lopez*, 142 Wn. App. 341, 351, 174 P.3d 1216 (2007) ("In determining a defendant's offender score . . . two or more current offenses . . . are presumed to count separately unless the trial court finds that the current offenses encompass the same criminal conduct."); *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 274, 111 P.3d 249 (2005) ("[A] 'same criminal conduct' finding is an exception to the default rule that all convictions must count separately. Such a finding can operate *only* to decrease the otherwise applicable sentencing range."). Because this finding favors the defendant, it is the defendant who must establish the crimes constitute the same criminal conduct.

¶20 The dissent's assertion that the statute is silent or "neutral" as to who bears this burden is simply unsupported by the plain language of RCW 9.94A.589. Dissent at 544. Same criminal conduct does not have a constitutional

dimension, and the legislature undoubtedly could have placed the burden of proof on the State, but it did not. Instead, the defendant's offender score "shall be determined by using all other current and prior convictions." RCW 9.94A-.589(1)(a). This default method of calculating a defendant's offender score is entirely in the State's favor because it treats all current offenses as distinct criminal conduct. Current convictions are omitted from the offender score only "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct." *Id.* The scheme—and the burden—could not be more straightforward: each of a defendant's convictions counts toward his offender score *unless* he convinces the court that they involved the same criminal intent, time, place, and victim. *Id.* The decision to grant or deny this modification is within the sound discretion of the trial court and, like other circumstances in which the movant invokes the discretion of the court, the defendant bears the burden of production and persuasion.

### *The Trial Court Exercised Appropriate Discretion in Finding Graciano's Crimes Did Not Constitute the Same Criminal Conduct*

¶21 Two crimes manifest the "same criminal conduct" only if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.* As part of this analysis, courts also look to whether one crime furthered another. *State v. Dunaway,* 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987); *see also State v. Garza-Villarreal,* 123 Wn.2d 42, 46, 864 P.2d 1378 (1993).

¶22 If the defendant fails to prove any element under the statute, the crimes are not the "same criminal conduct." *Maxfield,* 125 Wn.2d at 402. "[T]he statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act." *Porter,* 133 Wn.2d at 181.

¶23 Here, we do not need to reach the comparatively more difficult question of whether Graciano's objective

intent changed from one crime to the other because the evidence heard by the trial court does not suggest Graciano's crimes were committed at the same time and place. At best, the record is unclear. E.R.'s testimony discussed various incidents in a disjointed manner, with no suggestion the incidents were continuous or simultaneous, or happened sequentially within a short time frame. The Court of Appeals acknowledged as much but erroneously relied on the *absence* of facts clarifying whether the incidents on the couch formed the basis for a child rape and both molestation convictions. *See Graciano*, slip op. at 9, 2011 Wash. App. LEXIS 1985, at *13-14.

¶24 Because Graciano bore the burden to establish each element of same criminal conduct under RCW 9.94A-.589(1)(a) and failed to do so as to same time and place, the trial court's refusal to enter a finding of same criminal conduct was not an abuse of discretion.

### III

### CONCLUSION

¶25 The Court of Appeals incorrectly employed a de novo standard of review for determinations of same criminal conduct. As we have consistently held, a sentencing court's determination of same criminal conduct will not be disturbed absent an abuse of discretion or misapplication of the law. Reviewed under this standard, the sentencing judge acted within her discretion in declining to find Graciano's crimes constituted the same criminal conduct. We reverse the Court of Appeals on this issue and reinstate the sentence imposed by the trial court.

MADSEN, C.J., and OWENS, FAIRHURST, J.M. JOHNSON, and GONZÁLEZ, JJ., concur.

¶26 WIGGINS, J. (dissenting) — I dissent from the majority opinion because it incorrectly places the burden of proving

same criminal conduct onto the defendant. Majority at 538-40. The majority announces a new rule that departs from prior expectations, that neither party has called for, and that is inconsistent with the policy of the Sentencing Reform Act of 1981 (SRA). *See* RCW 9.94A.010. Applying the proper rule, the defendant is entitled to a remand for resentencing.

## *The Majority's Rule Is Unsolicited*

¶27 Both Julio Cesar Aldana Graciano and the State cited approvingly to *State v. Dolen*, 83 Wn. App. 361, 921 P.2d 590 (1996) (State has the burden of proving separate criminal conduct) in their supplemental briefs. Furthermore, both parties reaffirmed at oral argument that the burden of proof for a determination of same criminal conduct fell on the State.

¶28 At oral argument, counsel for Graciano argued that "initially it's the defendant who has to come forward and say the convictions are same criminal conduct, and . . . the burden shifts to the State to show they're not the same criminal conduct. . . ." Wash. Supreme Court oral argument, *State v. Aldana Graciano*, No. 86530-2 (May 24, 2012), at 20 min., 52 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org.

¶29 The State agreed that "it's the State's burden to prove they were not the same criminal conduct, just because that determination is going to rise from the presentation of evidence, and just as it is the State's burden to prove the defendant's criminal history." *Id.* at 15 min., 27 sec. In other words, there was no dispute between the parties that extant law placed the onus on the State to prove separate criminal conduct, just as the State was required to prove all other matters regarding criminal history and offender scores. *See id.* at 21 min., 11 sec.

¶30 Graciano and the State were both correct. As a prerequisite to taking away a defendant's liberty, we impose procedural protections at both trial and sentencing. In the

case of sentencing, RCW 9.94A.500(1) provides that "[i]f the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist." Although this language is neutral on its face, we have interpreted it to place the burden on the State to prove the defendant's criminal history by a preponderance of the evidence. *State v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986); *accord State v. Bergstrom*, 162 Wn.2d 87, 93, 169 P.3d 816 (2007); *In re Pers. Restraint of Cadwallader*, 155 Wn.2d 867, 876, 123 P.3d 456 (2005); *State v. Lopez*, 147 Wn.2d 515, 519, 55 P.3d 609 (2002); *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999).[2]

¶31 The legislature acknowledged this reading in its 2008 revisions to the SRA.[3] There, the legislature amended the SRA to make a defendant's silence an acquiescence to alleged criminal history (contravening our holding in *Ford*), and to allow the State to introduce evidence at resentencing of prior convictions not adequately alleged at the initial sentencing (contravening our holdings in *Lopez* and *Cadwallader*). 2008 FINAL LEGISLATIVE REPORT, 60th Wash. Leg., at 84. The legislature could have interfered, but did not, with the basic common thread of all these cases, that is, that "the prosecutor has the burden of proving an offender's criminal history to the court." *Id.* Rather, we noted in *State v. Mendoza*, 165 Wn.2d 913, 924, 205 P.3d 113 (2009), that

---

[2] We have further held that the State must prove by a preponderance of the evidence the comparability of the defendant's out-of-state convictions, *State v. McCorkle*, 137 Wn.2d 490, 973 P.2d 461 (1999). Our SRA jurisprudence draws the State's burden broadly, with the only exception being that the State need not prove the constitutional validity of prior convictions used in determining criminal history. *Ammons*, 105 Wn.2d at 187-88.

[3] I recognize that these revisions added to the statute the language "A criminal history summary relating to the defendant from the prosecuting authority or from a state, federal, or foreign governmental agency shall be prima facie evidence of the existence and validity of the convictions listed therein." However, this new language does not change my reading of RCW 9.94A.500. LAWS OF 2008, ch. 231, § 2(1). By its plain language, it concerns only the initial, prima facie burden of production and does not purport to shift the ultimate burden of persuasion. Indeed, it is perfectly consistent with the burden-shifting regime envisioned by counsel (*see* Wash. Supreme Court oral argument, *supra*, at 20 min., 52 sec.).

the legislature's concern was " 'to ensure that sentences imposed accurately reflect the offender's actual, complete criminal history' " (quoting LAWS OF 2008, ch. 231, § 1). We then reaffirmed that this goal was consistent with placing the burden on the State to prove criminal history and to ensure that the record supported the defendant's alleged history. *Id.* at 920. In other words, as the State properly conceded at oral argument, it is the State's duty to present an accurate and complete criminal history. And a criminal history that contains too many charges is just as inaccurate as a criminal history that contains too few.

¶32 Just as our prior cases require the State to prove the defendant's criminal history, so the State must prove that the defendant's other current offenses should be included in the criminal history by proving that the other current offenses involve separate conduct. The question of same or separate criminal conduct is governed by RCW 9.94A.589, which, like RCW 9.94A.500, addresses calculation of the offender score. RCW 9.94A.589(1)(a) provides that "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime" and defines "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place and involve the same victim." Like RCW 9.94A-.500, this language is facially neutral but it should be read consistently with the burden that we have placed squarely upon the State, an allocation that the legislature has never changed.[4] The issue of same or separate criminal conduct has the singular purpose of factoring into the defendant's

---

[4] The majority argues that our "assertion that the statute is silent or 'neutral' as to who bears this burden is simply unsupported by the plain language of RCW 9.94A.589." Majority at 539. As the majority points out, the legislature could have placed the burden of proof on the State, but it did not. Importantly, however, the legislature did not place the burden of proof on the defendant either. Nowhere in its plain text does the SRA purport to allocate a burden of proof, and in fact the majority does not rely on the plain text but on its own reasoning that the "default" position of separate criminal conduct implies a burden when a defendant seeks a departure from the default.

offender score. The majority's conclusion that same/separate criminal conduct is different—that it can be splintered off from the rest of the criminal history calculus—is an invention of the majority. Neither party took the majority's position, neither the superior court nor the Court of Appeals conceived of it, the SRA does not provide for it, and it is antithetical to the SRA's policy goals.

¶33 The legislature enacted the SRA to structure discretion in sentencing and to provide sentences "commensurate with the punishment imposed on others committing similar offenses." RCW 9.94A.010(3). The difficulty is that given the expansive reach of the criminal code, a given course of criminal conduct may potentially be charged as more or fewer offenses. *See State v. Daniels*, 165 Wn.2d 627, 642, 200 P.3d 711 (2009) (Chambers, J., dissenting) ("Over the years, more and more conduct has been criminalized; definitions of crimes often overlap and crimes can be committed by alternative means, in different degrees, and may be aggravated or enhanced. Under current Washington law, the same criminal course of conduct often can result in multiple counts of multiple charges, in multiple potential degrees." (citation omitted)). Thus, in the absence of a judicial check on the multiplicity of offenses, a given defendant's sentence might be determined as much by the number of criminal offenses the prosecutor could identify as by the defendant's actual criminal conduct. This result would contravene the SRA's express purpose of similarly treating similarly situated defendants and would not reduce discretion in sentencing but merely shift it to the prosecutor.

¶34 The majority intuits that a defendant should bear the burden of proving same criminal conduct because the determination works to the defendant's benefit. This rationale appears nowhere in the statute and fails as a general principle. A verdict of not guilty favors the defendant, yet we do not require that the defendant disprove guilt. Similarly, a finding of an affirmative defense favors the defen-

dant, but we allocate the burden of proof to the State on some affirmative defenses. *See, e.g.*, *State v. Acosta*, 101 Wn.2d 612, 615-16, 683 P.2d 1069 (1984) (State bears burden of disproving self-defense in an assault case); *State v. McCullum*, 98 Wn.2d 484, 490, 656 P.2d 1064 (1983) (State bears burden of disproving self-defense in a murder case). *But see State v. Box*, 109 Wn.2d 320, 327, 745 P.2d 23 (1987) (defendant bears burden of proof on insanity defense). Our test for allocating the burden of proof on an affirmative defense is not who benefits, but whether the affirmative defense negates an element of the offense or whether there is a legislative intent to shift the burden. *State v. Camara*, 113 Wn.2d 631, 638, 781 P.2d 483 (1989). Neither the SRA nor its legislative history suggests that the party benefiting from a given finding must bear the burden of proof. The more reasonable reading, given the legislature's acquiescence in our holdings in *Ford*, *Lopez*, and *Cadwallader*, is that the State bears the ultimate burden with respect to all aspects that go to offender score.

¶35 Furthermore, bearing the burden of proving separate criminal conduct would not significantly prejudice the State for two reasons. First, we observed in *Ford* that the State already gathers evidence of a defendant's criminal history "[i]n the normal course." 137 Wn.2d at 482. Similarly, the State already gathers evidence of a defendant's criminal conduct in the normal course of prosecution. If the evidence is sufficient to prove that two or more charges constituted separate criminal conduct, that evidence should be presented to the sentencing court. If the evidence points to same criminal conduct or is insufficient to discern where one offense ended and the other began, the State should not be entitled to rely on that ambiguity to enhance the defendant's sentence.

¶36 Second, Minnesota's experience demonstrates that a sentencing scheme highly analogous to ours, *In re Pers. Restraint of Breedlove*, 138 Wn.2d 298, 307, 979 P.2d 417 (1999), can work with imposing the burden on the State. In

Minnesota courts, the burden of proving multiple crimes that were *not* part of the same behavioral incident falls squarely on the State.[5] *State v. Williams*, 608 N.W.2d 837, 841 (Minn. 2004); *State v. McAdoo*, 330 N.W.2d 104, 109 (Minn. 1983); *State v. Gilbertson*, 323 N.W.2d 810, 812 (Minn. 1982); *State v. Zuehlke*, 320 N.W.2d 79, 82 (Minn. 1982). The statute is couched in a policy that "protects defendants from both multiple sentences and multiple prosecutions and ensures that 'punishment [is] commensurate with the criminality of defendant[s'] misconduct.'" *Williams*, 608 N.W.2d at 841 (footnote omitted) (quoting *State v. Johnson*, 273 Minn. 394, 399, 141 N.W.2d 517 (1966)). These policy concerns are no less salient here. We should follow Minnesota in keeping the burden of proof on the State.

*The Court Abused Its Discretion by Not Making a Determination of Same or Separate Criminal Conduct*[6]

¶37 A trial court abuses its discretion when its decision is based on untenable grounds. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). This means that the decision rests on facts unsupported in the record or is reached by applying the wrong legal standard. *Id.* (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). Here, the trial court applied the wrong legal standard. Presented with the issue of same criminal conduct at the sentencing hearing, the court made a summary finding that

[t]he Instructions were clear that there needed to be separate and distinct acts. And that's – and based on the record of the testimony, that there was certainly sufficient evidence for each and every one of the counts to be separate and distinct.

Verbatim Report of Proceedings (VRP) (Jan. 22, 2010) at 6.

---

[5] MINN. STAT. § 609.035 (outlining the Minnesota "single behavioral incident" rule, which is analogous to our same-criminal-conduct doctrine).

[6] Because neither party has raised a jury trial issue under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) or *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), we do not address the issue.

¶38 The majority holds that a trial court's determination of same criminal conduct should not be disturbed unless the court abuses its discretion. Majority at 537. But here the trial court never made its own determination of same or separate criminal conduct. Rather, the trial court gave the jury an instruction to "unanimously agree as to which act has been proved beyond a reasonable doubt. The particular act for each count must be separate and distinct from any other count." Clerk's Papers (CP) at 77; *see State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984). But this instruction does not encompass the statutory definition of "same criminal conduct," namely, the three requirements of same criminal intent, same time and place, and same victim. RCW 9.94A.589(1)(a). Relying on the jury's judgment pursuant to this instruction, the trial court suggested that the jury had already decided separate criminal conduct and held without explanation that the jury's decision was supported by sufficient evidence. In other words, neither the jury (because it was not instructed on the statutory test) nor the sentencing judge (because she deferred to the jury) ever decided that Graciano's offenses were "separate criminal conduct" as defined by RCW 9.94A.589(1)(a). The trial court had no discretion to adopt a jury determination that was based on an inapplicable instruction.

¶39 The trial court further abused its discretion by failing to use the preponderance of the evidence standard to determine same criminal conduct. The SRA mandates that criminal history be proved by a preponderance of the evidence, RCW 9.94A.500(1), and as part of the determination of criminal history, same or separate criminal conduct should be decided by the same test. This is because the purpose of criminal history in the SRA scheme is to determine offender score and thus the standard sentencing range. As a factor that reduces offender score, same criminal conduct is part of the same inquiry. In fact, same criminal conduct is a highly consequential part of the

offender score inquiry, with the potential to profoundly affect a defendant's sentence (particularly if the defendant has prior sex offenses, which are trebled under the statute). It would be absurd to hold that the court must determine the existence of criminal history by a preponderance of the evidence and then may apply a lesser standard in deciding how many offender score points that criminal history actually constitutes. The preponderance of the evidence standard should control the whole of the offender-score inquiry.

¶40 Finally, the trial court abused its discretion by evaluating for sufficiency of the evidence rather than making its own determination of same or separate criminal conduct. The majority holds that the trial court has discretion to grant or deny a determination of same criminal conduct. Majority at 540. But the trial court must still make its own decision to grant or deny.[7] The statute vests responsibility for determining same or separate criminal conduct in "the court." RCW 9.94A.589(1)(a). For the trial court to delegate this responsibility to a jury, especially an improperly instructed one, is plainly against the statutory procedure for determining same criminal conduct. And, by taking the jury's determination at face value, the court also contravened the SRA's policy goals of constraining judges' discretion and according equal treatment to similarly situated defendants. RCW 9.94A.010(3) (the SRA "structures, but does not eliminate, discretionary decisions affecting sentences," and sentences are to "[b]e commensurate with the punishment imposed on others committing similar offenses"). In the SRA's statutory scheme, same criminal

---

[7] While the language of RCW 9.94A.589(1)(a) is permissive rather than mandatory (". . . *if* the court . . . ." (emphasis added)), the language is better read to mean that the trial court need not decide same or separate criminal conduct sua sponte but must still make an affirmative decision, one way or the other, when the defendant places same criminal conduct at issue. Therefore, I would hold that when Graciano raised the issue of same criminal conduct at his sentencing hearing, VRP (Jan. 22, 2010) at 3, the sentencing court was obligated to make its own determination of same or separate criminal conduct by a preponderance of the evidence.

conduct will often be a major factor in determining the sentencing range. *See* RCW 9.94A.510 (standard ranges escalate with increasing offender score). Therefore, in order to prevent similarly situated defendants from receiving divergent sentences, the determination of same criminal conduct cannot be wholly up to the judge's discretion. It is not enough for the judge to make a summary decision without independent analysis; rather, the statute interposes the *preponderance of the evidence test.* The trial court contravened both the letter and the spirit of the SRA when it used a sufficient-evidence analysis. While the court may certainly consider the jury's findings in determining same criminal conduct, it may not substitute the jury's determination for its own altogether.

¶41 It is entirely possible that the trial judge believed Graciano's acts constituted separate criminal conduct. We cannot be certain because the trial judge did not state her own reasoning on the record. Because the trial court analyzed only the sufficiency of the evidence, we cannot determine whether it would have found same criminal conduct by a preponderance of the evidence. Therefore, I would remand this case to the trial court to make a specific finding of same or separate criminal conduct. If the judge finds by a preponderance of the evidence that Graciano's charges of child molestation and rape of a child were the same criminal conduct or determines there was insufficient proof either way, then Graciano is entitled to resentencing with a corrected offender score.[8] If the judge finds by a preponderance of the evidence that Graciano's crimes

---

[8] Graciano's offender score was calculated as 15. CP at 118. Even if Graciano's two child molestation convictions merge into his four rape-of-a-child convictions, the minimum offender score he could have is 9—3 for each of his concurrent convictions under RCW 9.94A.525(17). Because 9 is the highest offender score contemplated by the SRA, RCW 9.94A.510, it could be argued that any sentencing error was harmless; a defendant with an offender score of 15 is situated equally to a defendant with an offender score of 9. *See State v. Bobenhouse,* 166 Wn.2d 881, 896, 214 P.3d 907 (2009). But in the present case, the court sentenced Graciano to the maximum term within the standard range—318 months to life on each count of rape of a child, and 198 months to life on each count of child molestation. CP at

constituted separate criminal conduct, then his sentence is valid.

¶42 Graciano's crimes were undoubtedly very serious— not only in the profound harm he inflicted upon E.R. but also in his abuse of his family's trust. But punishing him accordingly does not demand of us a holding that neither party asked for and that actually contravenes both parties' understanding of the SRA. Nor does it require us to put the onus of an unclear record on the defendant. The clearer rule, and the one more consistent with the policy of the SRA, is to make the State responsible for the entirety of the criminal history issue.

¶43 I dissent.

C. JOHNSON, J., concurs with WIGGINS, J.

¶44 CHAMBERS, J.[*] (concurring in dissent) — I agree with much in the well reasoned dissent. I write separately to observe that what we actually do on review, and what we say we are doing, often part company. We often state a standard of review and effectively ignore or avoid it, often for the very good reason that it does not well fit the posture of the case or the issue entrusted to us for review.

¶45 Simply put, the amount of deference appellate courts properly give trial courts varies directly with the amount of discretion the trial court properly has. When the determination of the particular issue rests upon the cred- ibility of the witnesses or the weight of the evidence, the trial court has vast discretion and the appellate courts properly show considerable deference. But when the facts are uncontested or when determination of the particular issue turns on the meaning of a statute, a constitution, or a

---

121. The court may have decided differently if Graciano's offender score had been calculated correctly at 9.

[*] Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

principle of common law, the trial court has no discretion and we properly show no deference. We sometimes describe both as abuse of discretion review (one a very special type of abuse of discretion review), which has bred considerable confusion in the bench and bar. In my experience, whether the trial court has discretion or not is determined on a sliding scale and the scope of our review slides accordingly. But as this standard resists pithy encapsulation, we often slide past offering one.

¶46 As we recently observed:

> Appellate courts give deference to trial courts on a sliding scale based on how much assessment of credibility is required; the less the outcome depends on credibility, the less deference is given to the trial court. Washington has thus applied a de novo standard in the context of a purely written record where the trial court made no determination of witness credibility. *See Smith[ v. Skagit County]*, 75 Wn.2d [715,] 719[, 453 P.2d 832 (1969)]. However, substantial evidence is more appropriate, even if the credibility of witnesses is not specifically at issue, in cases such as this where the trial court reviewed an enormous amount of documentary evidence, weighed that evidence, resolved inevitable evidentiary conflicts and discrepancies, and issued statutorily mandated written findings. *See [In re Marriage of] Rideout*, 150 Wn.2d [337,] 351[, 77 P.3d 1174 (2003)]; *Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (deference rationale not limited to credibility determinations but also grounded in fact-finding expertise and conservation of judicial resources).

*Dolan v. King County*, 172 Wn.2d 299, 311, 258 P.3d 20 (2011); *see also Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994)).

¶47 That said, I believe the Court of Appeals panel below showed wisdom in adopting Judge Sweeney's well reasoned approach in *State v. Torngren*, 147 Wn. App. 556, 196 P.3d 742 (2008). Whether two crimes constitute the same criminal conduct for purposes of calculating the offender score is

determined by a test established by the legislature by statute. " 'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). As Judge Sweeney noted, the test is an objective one and, when no fact-finding is required, leaves no room for judicial discretion. *Torngren*, 147 Wn. App. at 563. Where there is no room for judicial discretion, there is no reason to review for its abuse. Appellate courts are in just as good a position to apply objective standards to uncontroverted facts as trial courts. Limiting our review to abuse of discretion is convenient for the appellate court because it requires a less searching review, but in my experience, where we find an obvious error, we call it an abuse of discretion. I have come to conclude that where the test is objective and the facts are uncontroverted, there is no reason for appellate courts not to do a thorough de novo review. This is especially true of issues of same criminal conduct that may have a profound effect on the length of a sentence.

¶48 Finally, I am startled that the majority today announces, in a case that did not present the question, the entirely new rule that the defendant bears the burden of showing that current offenses are *not* the same criminal conduct for scoring purposes. Majority at 538-39. We granted review of only one of the four issues presented: whether the proper standard of review for a trial court's determination of same criminal conduct was de novo or abuse of discretion. *See* Order Granting Review (Jan. 5, 2012). The parties did not ask us, and we did not grant review, to decide the allocation of burdens at sentencing. As the dissent points out, the parties agree, as do I, that the State bears that burden. Dissent at 541-43. The majority's pronouncement on this issue is, in my view, wrong and dicta, and likely violates due process principles.

¶49 The majority gives insufficient weight to the fact that every time we have considered who has the burden of

establishing the appropriate sentence, we have placed it on the State. *See, e.g., State v. Saenz,* 175 Wn.2d 167, 172, 283 P.3d 1094 (2012); *State v. Knippling,* 166 Wn.2d 93, 98, 100-01, 206 P.3d 332 (2009); *State v. Bergstrom,* 162 Wn.2d 87, 93, 169 P.3d 816 (2007); *In re Pers. Restraint of Cadwallader,* 155 Wn.2d 867, 876, 123 P.3d 456 (2005); *State v. Lopez,* 147 Wn.2d 515, 519, 55 P.3d 609 (2002); *State v. Ford,* 137 Wn.2d 472, 480-81, 973 P.2d 452 (1999); *State v. Ammons,* 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796 (1986); *see also State v. Dolen,* 83 Wn. App. 361, 365, 921 P.2d 590 (1996) (explicitly putting the burden of establishing whether two crimes are the same criminal conduct on the State). None of the cases cited by the majority hold otherwise. The only arguable exception to the general rule that I could find is that the State does not have the burden of proving the lawfulness of *prior* convictions it seeks to use as part of the defendant's criminal history. *State v. Irish,* 173 Wn.2d 787, 789-90, 272 P.3d 207 (2012) (citing *Ammons,* 105 Wn.2d at 187-88). But this follows from our overriding respect for settled judgments, *In re Pers. Restraint of Grantham,* 168 Wn.2d 204, 211, 227 P.3d 285 (2010), a principle not implicated in the determination of whether two current convictions are for the same criminal conduct.

¶50 Further, as we recently affirmed, there are due process implications at stake in sentencing that can be satisfied only by requiring the State to prove its case. *See State v. Hunley,* 175 Wn.2d 901, 287 P.3d 584 (2012). Placing the burden on the defendant is inconsistent with the overriding general principle that it is the State's job to prove the case and establish the appropriate sentence. I have deep concerns that placing the burden on the defendant to show same course of conduct will not satisfy a due process challenge. I would affirm.

¶51 I respectfully dissent.

Reconsideration denied April 12, 2013.