111 P.3d 286 (2005)
STATE of Washington, Respondent,
v.
Joseph Albert DECKER, Appellant.
No. 53614-1-I.
Court of Appeals of Washington, Division 1.
May 9, 2005.
Dana M. Nelson, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Alice Degen, King County Prosecutor's Office, Seattle, WA, for Respondent.
APPELWICK, J.
¶ 1 Joseph Decker walked into a convenience store and stole two packs of cigarettes. Corey Judd, the store clerk and the son of *287 the store owners, followed Decker outside. Judd placed his arm on the driver's window sill of the car Decker entered and asked for the cigarettes back. Decker, sitting in the front passenger seat, reached across the driver and grasped Judd's arm. Concerned that he might be dragged, Judd flailed about to free himself and sustained injuries to his arm and foot. Decker was convicted of first degree robbery and appeals, arguing that he did not inflict the injury on Judd and therefore the state could not prove all the elements of first degree robbery. We conclude that sufficient evidence supported the conclusion that Decker's acts were a proximate cause of Judd's injuries, and therefore, that Decker inflicted Judd's injuries. We affirm.

FACTS
¶ 2 In the afternoon of July 7, 2003, Corey Judd was working at his parents' store, the 757 Mini-Mart. Joseph Decker walked into the store, went behind the counter, and grabbed a handful of cigarettes. As he left, he turned and said, "Thanks, buddy." He did not pay for the cigarettes. Judd called 911 and followed Decker outside to write down his license plate number.
¶ 3 Decker got into the front passenger seat of his car. There were three other people in the car. Judd approached the driver's door and put his hands on the windowsill of the door. Judd was upset that someone would steal from his family's business. He told the driver not to go anywhere. Judd noticed the other passengers looked surprised, and thought he heard someone laugh inside the car. He asked for the cigarettes back. Decker dropped the cigarettes onto the floor of the car, leaned over across the driver, and grabbed Judd's left arm. The grasp itself did not bruise Judd's arm or wrist.
¶ 4 Judd started thinking about times when he had seen stories on television about people getting yanked off the ground and dragged. When he initially tried to pull his arm away, he was not able to free himself. The car started rolling, and Judd started flailing around trying to break free. He tried to get free any way he could, although he admitted he did not try to grab and remove Decker's arm. He hit the passenger window with his fist to try to startle Decker into releasing him, and broke it with a single punch, lacerating his arm.[1] He also broke his toe either because the car ran over it or because he kicked the car. His doctor testified there was no way to know the actual cause of the injury, but it was more likely because of kicking.
¶ 5 Judd eventually broke free and the car drove off. He estimated that the whole incident, from Decker leaving the store until the end, took about 15 to 20 seconds. Judd's injuries were initially treated by some customers and paramedics, and then he drove himself to the hospital for further treatment.
¶ 6 At the end of the state's case, Decker moved to dismiss the first degree robbery charge because the state had failed to prove the elements of the crime. The court's instructions to the jury set forth the elements of robbery in the first degree:
A person commits the crime of robbery in the first degree when in the commission of a robbery or in immediate flight therefrom he or she inflicts bodily injury.
See RCW 9A.56.200(1)(a)(iii). Decker argued that "inflict" means to directly cause, and not merely result in bodily injury. Decker urged the trial court to rule that a "but for" cause is insufficient under the statute. The state argued against this "very narrow definition of the word inflict." The trial court agreed with the state:
I believe that these injuries were caused by the defendant's action, that the defendant put into motion a series of events by his reaching across and grabbing Mr. Judd as he was attempting to get his property back, and that this, in effect, was a cause for infliction of injury because of [Mr. Judd's] natural reaction to what the defendant had done.
The trial court noted that by reaching across and grasping Judd, Decker put in motion a *288 chain of events, and that sufficient evidence existed to deny the motion to dismiss. The jury convicted Decker of robbery in the first degree, and the trial court sentenced him within the standard range. Decker appeals and argues there was insufficient evidence to convict him of first degree robbery.

ANALYSIS
¶ 7 The intent required to prove robbery in the first degree is intent to deprive the victim of property. State v. Byers, 136 Wash. 620, 622, 241 P. 9, 10 (1925); State v. Carter, 4 Wash.App. 103, 109, 480 P.2d 794, 797 (1971). Intent to cause bodily injury is not an element of robbery in the first degree as defined in Washington. State v. McCorkle, 88 Wash.App. 485, 501, 945 P.2d 736 (1997), affirmed, 137 Wash.2d 490, 973 P.2d 461 (1999).
¶ 8 Decker argues that we should interpret the Washington statute like the California court interpreted its statute in People v. Jackson, 77 Cal.App.4th 574, 575, 91 Cal.Rptr.2d 805 (2000). The Jackson court held that the California statute was "not violated unless the corporal injury results from a direct application of force on the victim by the defendant." Jackson, 77 Cal.App.4th at 580, 91 Cal.Rptr.2d 805. But Decker's comparison to Jackson is misplaced. The California statute at issue in Jackson criminalized the willful infliction of corporal injury. Jackson, 77 Cal.App.4th at 576, 91 Cal.Rptr.2d 805 (quoting Penal Code section 273.5, which states "Any person who willfully inflicts ... corporal injury") (emphasis added). Unlike the California statute, the Washington statute contains no intent requirement for the infliction of bodily injury. McCorkle, 88 Wash.App. at 501, 945 P.2d 736. The only intent required is the intent to deprive the victim of property. Thus, Washington's statute and California's statute are not comparable and the Jackson holding is inapplicable. In fact, the Jackson court noted that if the California statute was more broadly defined, and did not use the words "willfully inflicts," it would have concluded that the Legislature "intended to extend criminal liability to the direct, natural and probable consequences of the battery." Jackson, 77 Cal.App.4th at 580, 91 Cal.Rptr.2d 805. This is a proximate cause theory of causation. See Jackson, 77 Cal.App.4th at 579-80, 91 Cal.Rptr.2d 805.
¶ 9 Under Washington law, for crimes defined to require specific conduct and specific consequences, criminal liability attaches where the conduct is the actual and proximate cause of the result:
In crimes which are defined to require specific conduct resulting in a specified result, the defendant's conduct must be the "legal" or "proximate" cause of the result. Before criminal liability is imposed, the conduct of the defendant must be both (1) the actual cause, and (2) the "legal" or "proximate" cause of the result.
State v. Rivas, 126 Wash.2d 443, 453, 896 P.2d 57 (1995) (citations omitted). In criminal cases, "[p]roximate cause is a cause which in direct sequence, unbroken by any new, independent cause, produces the event complained of and without which the injury would not have happened." State v. Gantt, 38 Wash.App. 357, 359, 684 P.2d 1385 (1984).
¶ 10 In a challenge for sufficiency of the evidence, we review the evidence to determine whether any rational fact finder could find guilt beyond a reasonable doubt. State v. Varga, 151 Wash.2d 179, 201, 86 P.3d 139 (2004). Here, the jury had sufficient evidence to conclude that in flight from a robbery, Decker inflicted injury on Judd. Decker held onto Judd's arm. This act directly caused Judd to flail about and attempt to free himself. Judd's attempt to free himself directly caused his injuries. Thus there is a direct causal link between Decker's act and Judd's injuries. Without Decker's act of holding Judd's arm, Judd would not have been injured. Therefore, Decker inflicted Judd's injuries because his acts were both an actual and a proximate cause of Judd's injuries. It is not relevant that Decker did not intend to injure Judd. See McCorkle, 88 Wash.App. at 501, 945 P.2d 736.
¶ 11 Further, the driver's act of starting the car rolling was not an intervening cause that relieves Decker of responsibility for Judd's injuries. An intervening cause is a force that operates to produce harm after the defendant has committed the act or omission *289 State v. Roggenkamp, 115 Wash.App. 927, 945, 64 P.3d 92 (2003) (citing State v. Souther, 100 Wash.App. 701, 710, 998 P.2d 350 (2000)), aff'd, 153 Wash.2d 614, 106 P.3d 196 (2005). "`Intervening' is used in a time sense; it refers to later events." Souther, 100 Wash.App. at 710, 998 P.2d 350 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 44, at 301 (5th ed.1984)). Here, Decker's act was not yet complete; he was still holding on to Judd's arm when the car started rolling. The driver's act of starting the car rolling, therefore, was not a later event or an intervening cause; it was at most a concurring cause. See Souther, 100 Wash.App. at 710, 998 P.2d 350.
¶ 12 We conclude that sufficient evidence supported the conclusion that Decker's acts were a proximate cause of Judd's injuries, and therefore, that Decker inflicted Judd's injuries.
¶ 13 We affirm.
WE CONCUR: COX, C.J., and BAKER, J.
NOTES
[1] The two passengers in the back seat testified that Judd actually hit the window twice, and broke it on the second hit.